Okay, thank you and welcome back. And we'll now hear argument in the second case set for this morning, Ambrosio v. Progressive Preferred Insurance Company, case number 24-2708. And we'll hear from Mr. Lowther. Good morning, Your Honors. Lee Lowther on behalf of the Department of Senate Appellants, I'd like to reserve two minutes of my time in rebuttal. Yeah. The district court abused its discretion by finding that this court's decision in LARA precluded class certification on materially distinguishable claims and a materially distinguishable class definition to that presented here. In the district court below, we argued that LARA was correctly decided but inapplicable to the claims and class definition in the case presented to you. We made the same arguments in our 23-F petition. We made the same arguments in an entire section of our opening brief. And after we filed that, this court in its JAMA decision held that the distinctions that we drew were right. LARA is – Well, maybe we can drill down on that because it seems like the distinctions in JAMA were different. If I read JAMA, I mean, first of all, JAMA followed LARA on the first issue on the condition of the car. And then it said, but as to negotiation, we're going to take out – that was against the regulation and so we're going to take that out. If I read JAMA and try to make sense of it, it was saying we can just delete this one column on each of these numbers. We don't have to go back to any individualized claim. That doesn't mean – I know these are all different but you're not just saying, hey, here's one number we can delete this. You're actually saying you used a different calculation of fair market value. You may be right. You may be wrong. But isn't that by definition individualized? So Your Honor, the claim that we are bringing is exactly like the claim in JAMA that a negotiation deduction is a categorically improper deduction and it has no place in an appraisal of market value as – You're saying here's one category and we can deduct it. Sir, I'm sorry. I didn't hear that. You're saying here's one category and we can deduct that category and use everything else. That's exactly what we're saying. So just like in JAMA, we will be asking the jury to credit the whole of the Mitchell Report that Progressive chose and actually used to value each of my client's claims as well as each member of the putative class. And the District Court below found that we had in fact presented common evidence that the legitimacy of the projected sold adjustment, the negotiation deduction in Progressive's parlance, that the legitimacy of that was a common issue and that our common evidence that that deduction is categorically improper showed that each class member suffered the injury of being paid less than what the policy required Progressive to pay. Well, I don't think it's – OK. So you're saying that everybody – there's two questions here. Number one is every class member harmed because that was also an issue in Laura was that some – at least there was some evidence that some were overpaid. So it's going to get impossible to decide. Now, the Supreme Court has – well, as I understand it, they're holding – well, we don't know whether they're holding JAMA, I guess. But the Supreme Court has taken the Davis case. Are you following that? I am following the Davis case, Your Honor. And that – what's your take on whether that could have some impact on this case? So our case – our positions at the Davis case will have no impact on this. So unlike in Laura, and every record is distinct and the class definition in Laura is materially different from that here. As Your Honor noted in Laura, the class definition there included people for – who had their vehicles valued by an appraisal process. They were never actually paid an amount that was the value affected by the anonymized adjustment that they were challenging. In our class, it includes only people who were paid the amount of a mutual report with the categorically improper deduction that were challenging. Leaving aside that, as I read the record, until 2021, it was always down. Aren't you, in effect, saying, yeah, well, too bad, Progressive. If some of our clients, some of the class, were overpaid, they weren't overpaid enough because we get to deduct this entire category. So, Your Honor, there is no member – You're saying that? We're not saying that, Your Honor, because unlike the condition adjustment in JAMA, which could increase the value or decrease the value, the negotiation deduction here is just that. It is a deduction. And based on our common evidence – And it was always a deduction until 2021. It remains a deduction still. It only works downward. So that's a material distinction from Laura. In JAMA, the court said that the deduction, the negotiation deduction, was prohibited by, I guess, regulation, which was sort of incorporated into the statute. It was contrary to law. Do you have a similar argument with regard to the PSA, or are you just relying on that as part of a definition of fair market value that you can't use it? We are arguing that the contract, the way that you determine market value, based on our common evidence, is that the norm in the modern internet-driven market is for dealers to price to market. And so the list price is the proper reflection of market value at the time you are determining the value of a vehicle. And what language in the contract are you relying on to make that? So in answer to my first question, there's not a regulation that prohibits it, as there arguably was, or the court found that there was in JAMA. So you're not relying on regulation. You're relying solely on the contract. What language in the contract are you relying on? That actual cash value is determined by market value, age, and condition of the vehicle. Isn't that the problem here, though, that actual cash value, is there a definition in the contract of that? Market value, age, and condition of the vehicle at the time the loss occurs. That is the definition. I understand, but why, I mean, that's the same definition we were dealing with in Lara, effectively. Your Honor, I didn't see a definition, a contractual definition, at issue in Lara. And my understanding of the case, based on the opinion that this court issued, is that the plaintiffs had not identified any particular provision of their contract that had been violated. Rather, they were relying on a regulation saying, you have to tell us more about this so we can determine, is this right or wrong? Here, we are challenging the substance of these negotiation deductions. Progressive could say nothing at all about them, or they could explain them ad nauseum, and our claim would be the same, you can't do it. That's a breach of contract. The district court below found that we had common evidence from which a jury could determine that the application of negotiation deduction breached my client's contracts and breached every other member of the putative classes' contracts. Your friends on the other side say that you didn't plead for nominal damages. I'd like you to just touch on that. Sure, Your Honor. So, we did not plead for nominal damages, but under Arizona law, if there were to, if a jury were to return- Could they face such other damages as the court may award? We do have an allegation of that, such other damages. And if a jury were to return a verdict that said progressives' conduct here breached the contract, but for whatever reason did not award damages, then we would move the court at that time to make the verdict conform. In Arizona, my understanding of the law there, based on the appellate decisions that my friend on the other side cited, is if you don't ask the judge to do that, then the court of appeals is not going to reverse and tell you to go back and give a dollar. That'd be harmless error at that point. But if you move for that at the time that the verdict is rendered, then you are entitled to that release from the court. I mean, one other problem, it seems to me, that makes this case different than JAMA is, JAMA, there were two subclasses. And I mean, you would agree that as to the condition of the vehicle, those claims would be precluded under LARA, correct? Yes, Your Honor. And even before LARA was issued, we never took issue with a condition adjustment. A condition adjustment... So what's the definition? What was the proposed class that you proposed below that was... Sure. All Arizona progressive insureds who, within the applicable statute of limitations, had their vehicles valued by a Mitchell report that was reduced by a projected sole adjustment. If they were not paid that amount, they're not a member of the class. If they went through an appraisal, like in LARA, they are not a member of the class. If they negotiated some different amount, they're not a member of the class. So that was the other thing I wanted to look at. The contract says that it provides for a challenge, right? If you don't like the amount that's provided, you can challenge it? You can. There's no obligation to do so. Well, but if you don't, doesn't that... I mean, that doesn't really make a lot of sense to say you haven't... I mean, if progressive is looking at these, if you say, hey... I mean, progressive has a contract that says like... Or I shouldn't say a contract. They've got a process they're using to try and come up with fair market value. If the potential plaintiff or the insurer doesn't think that that's correct and they can challenge it, progressive takes a closer look at it. How is that fair to say, well, we're not going to go through the provision that the contract provides. We're just going to sue and say, you could never do this in the first place. So it's fair, Your Honor. We're challenging a single rigged line on deduction that never should be applied in the first place. And to make an insured dip further into their pocket and pay for their own appraiser and pay for half of an additional appraiser, amounts that would dwarf the amount of the rigged deduction we're challenging here, that is not a fair process. We are challenging systemic conduct that can only be effectively addressed through a class action. Just like in JAMA. Your proposed class would only include those insureds who are disappointed in the determinant, progressive's determination as to value? Our class would only include those insureds who were paid the amount of a Mitchell report that included a negotiation deduction. So if they went through some of the process, then they would not be a member of the class. And would that preclude at trial progressive from pointing to Mitchell reports which show the values up, down, sideways? Well, Your Honor, each of the... Start with the yes or no. So the answer is no. But to dig deeply into the record or to back up, each member of the class, my clients included, were paid the amount as determined by a Mitchell report. And so the actual conduct that we're challenging here is at a particular point in time, progressive tendered performance of their contract. They said, here is the actual cash value of your vehicle as determined by the method we are required to use in contract. That's their performance. And each of those valuation reports has what we contend is the proper method that would comply with the contract, back out the one categorically improper deduction, and you have a valuation that complies with their contract. The class, as you propose it, would not include satisfied progressive customers who suffered a loss? Your Honor, it would include... It would include people whose insurers who received a valuation that included a projected sold adjustment. So I don't know satisfied or not, under our common evidence and our theory of liability, their contracts were breached and they did not receive the amount that they were entitled to, which is actual cash values determined by market value, age, and condition at the time of precluded from showing to the contrary? Progressive would not be precluded from introducing any kind of evidence that they otherwise would be entitled to present under the rules of evidence. But our common question of liability, whether or not their actual conduct is a breach of their uniform contract, is common to the class. And our evidence will show that they either breached or did not breach by applying the projected sold deduction. And the district court agreed with that, as have 10 other district courts on this very record, as did this court in JAMA, and as have the 5th, 6th, and 8th circuits in Mitchell, Hicks, and Stewart, respectively, in cases challenging the substance of a single line item deduction and the methodology the insurer chose and actually used to value actual cash value under the contract. My questions have eaten into your time, so. Oh, I reserve. We'll give you time for rebuttal. All right. Thank you. Thank you. Appreciate it. May it please the court. My name's Jeff Cashton of King & Spaulding. I represent the progressive respondents defendants. I want to jump right to, I think, the heart of the issue that the court has been asking about, which is this Laura, JAMA, and understanding them. And I think JAMA, while we would say that Judge Rawlinson may have had the right of it, candidly, we understand that we have to make sense of both of those cases and figure out how to apply them. And I think JAMA gives you the instructions of how to do it when it says you have to look at the nature of the claim. This is not about tagging names. It's about the nature of the claim. So let's think about the contract. No, I mean the nature of the claims, Your Honor. And so if you take a look at, in the record, at the supplemental appendix starting at 309 is the plaintiff's complaint in this case, the operative complaint, the second amended complaint. And at page 323 of the supplemental excerpt of records, they have their breach of contract claim. And they say, quote, defendants purported to pay plaintiffs and each of their class members the ACV or actual cash value of their total vehicles. Defendants, however, failed to pay the actual cash value of plaintiffs and members' vehicles because they applied this PSA. Thus, defendants failed to pay plaintiffs and each of the other class members the promised ACV of their total loss vehicles and thereby breached their contracts with plaintiffs and the other class members. So this is a classic case of parties suing an insurance company saying you owe us a certain amount, actual cash value. You didn't pay us actual cash value. That's LORA. And Your Honor asked earlier if LORA used market value as a reference. And in fact, it did. And you don't even have to look at LORA for that. You can look at the decision in JAMA. And if you look at page 929 through 930 in JAMA, the JAMA court explains that in LORA, there was a claim that it required showing an element of injury. And according to the court in JAMA, quote, this meant each plaintiff in LORA had to show that they received less money than they were owed. In other words, that they received less than the vehicle's pre-cash, actual cash value, which in turn was defined as, quote, fair market value. The district court says that plaintiffs now seek certifications for the breach of contract and breach of good faith and fair dealing claims. Yes. How do you respond to the action for breach of the covenant of good faith and fair dealing? Well, the parties have all agreed, Your Honor, that the issues for class certification rise and fall together with the breach of contract claim. And so once again, what that claim will turn on is whether progressive paid actual cash value or not. Is the Mitchell value minus PSA the actual cash value or the market value? So it's both and it's one measure of it. And the testimony in the record explains, Your Honor, that actual cash value is market value and it is an estimate of the value of a vehicle pre-crash. And there's lots of different ways to calculate actual cash value. The record shows, the plaintiffs experts agree with our experts, that it's essentially a range, all right? There's different methodologies that can be used. And as this court has noted in other cases and as the district court here noted, you can use different methodologies and our contract doesn't require a particular methodology to estimate the value. And the point is this. Within your methodology, you have a step that always reduces the value. How does that square? Well, it doesn't, Your Honor. It always reduces. What it does, Your Honor, is it is trying to estimate the market value of comparable vehicles. And so it's trying to figure out under Arizona law. It only goes down. It only goes up. It's not accurate is the way to say it, Your Honor. What the plaintiffs would prefer that we have to use is the list price. They think comparable vehicles that are offered for sale, the list price needs to be used. And our view is that the market value of comparable vehicles is the value, as Arizona law says, that a willing seller and a willing buyer would pay for the vehicle. And that's what Arizona law says is market value. And the projected sold adjustment is a way to estimate the market value of a comparable vehicle that has been offered but not actually sold. Does it take into account the condition of the vehicle? What is encompassed within this deduction? Is the condition part of that? So condition is not part of the projected sold adjustment. The condition adjustment is another adjustment that is made to the comparable vehicles. And so there's a methodology that Progressive uses, this Mitchell methodology, which estimates values of comparable vehicles, taking into account what's the market value of the vehicle. So if it's not, if it's been sold, actually sold, that's the market value. If it's listed for sale, the projected sold adjustment is applied as long as it's not a non-Hackle dealership. Condition is taken into account, different accessories. That gets you the comparable vehicle's values. Those are used to estimate a base value. And then the condition of the lost vehicle is also taken into account. As the court below observed, this is one methodology that's being used by Progressive. There are other methodologies. You can use the NADA guide, the Kelly Blue Book guide. You can do an appraisal and take into account what dealers say the value of the vehicle is worth. And what the record shows, for the named plaintiffs, for example. Counsel. Yes, sir. Were those used? Kelly, NADA? Well, we used Mitchell's methodology for these vehicles. But the named plaintiffs, at least one of them, introduced those methodologies in negotiations with Progressive to try to get a greater amount. So for example, Plaintiff Trenholm introduced a valuation from Kelly Blue Book that was several hundred dollars lower than what Progressive ultimately paid. The record also contains evidence that Plaintiff Trenholm had actually purchased her vehicle about a year before her accident and paid less than Progressive gave her. And the point, Your Honor, is that the jury is entitled to take this evidence of market value, of different valuations, and to make a factual finding. Did Progressive pay the actual cash value or not when it settled these claims, even though it applied the PSA that the plaintiffs challenged? And that's an individualized issue. If you think about this as an individual trial, imagine for a moment this wasn't a class action and Plaintiff Trenholm was going to go to trial on her claim that she wasn't paid actual cash value because of the PSA. The question the jury would ultimately be asked to decide to breach a contract is, how much were you paid and was that the actual cash value of your vehicle or not? Now multiply that times what, 10, 20,000? Those are the factual questions you have to ask in this case. Compare this to JAMA now. JAMA was a case where, as the court said, the deduction at issue, the negotiation deduction, was flatly barred by state law. Washington law, the district court had held, barred that deduction. That's not our case. In the red brief at 39, Progressive discusses JAMA and Sampson, which JAMA cited, to suggest that when a challenge adjustment, I'm quoting you, is not prohibited by state law, JAMA reaffirmed that determining actual cash value requires the fact finder to examine different legally permissive methods of determining actual cash value. I don't think that's the holding of JAMA. JAMA distinguished Sampson by explaining that the unlawful conduct challenged by the negotiation class is applying one specific deduction. That the conduct was prohibited by statute in JAMA while it's prohibited by contract here, contract versus statute, isn't a distinction, is it? Well, Your Honor, in JAMA, the court affirmed the district court's decertification of the condition adjustment class. And it did so by saying that you would, that law would apply because that would be the case, for example, where the payouts were not actually based on the challenge adjustment or where, even if the payouts were based on the challenge adjustment, they still exceeded actual cash value. That is JAMA at 936. And the point that JAMA court was making is, if you look at the nature of the claim, if the claim is a factual challenge to whether they were paid market value or not, then you have to take into account individualized evidence of what is the value of the car. If instead, the challenge is based on the flatly barred application of an adjustment where it's barred by statute or regulation, in those instances, the breach that's being argued is not you didn't value the car properly. It's that you used an adjustment that is unlawful as a matter of law. That is a matter of fact. And that's the distinction JAMA presses. And in fact, and so to put a finer point on it, I mean, the real distinction here is that in JAMA, it was barred by law. And here they're saying, well, it's not barred by law, but it is barred by the contract. And the problem is once you roll it back into the contract, you bring in the whole fair market value issue and you have to evaluate whether this represents fair market value or not. It might in some circumstances and it might not in others. That's exactly right, your honor. If we had a contract that had a specific methodology spelled out, if it said you can't use a PSA, this would be more like JAMA. But we don't. Does the contract actually say you can use whatever methodology you choose? It does. Where does it say that? I'd have to get that for you, your honor. It's in the record. It does say that we can use whatever methodology we want and I'll try to locate that for you and I can submit it. But it is in the contract. With the contract, the only obligation is to say, and I think it might be in our brief and I just don't have my finger on it. I did want to note one other thing, your honor. I did go back to try to make sense of JAMA and Laura. I did go back and actually look in the record. Once you do, could you submit a supplemental letter and explain the difference to us? Sure, I will. I'm kind of being facetious, but it is hard to parse out the difference. I mean, that's I think what we're struggling with here. It is very hard. And that's why I think Judge, in a sense, Judge Rawlinson had it right. But we practitioners have to know that they both apply. JAMA doesn't replace Laura. And this is the eye of the needle I think you can thread. And I did go back and look at the arguments that the parties and the district court made in JAMA. So if you look at the plaintiff's motion for class certification in JAMA, their reply brief, and this is in the docket. It's docket number 58 of the lower court decision in JAMA at page six. They say, quote, thus the plaintiff is not so much alleging that State Farm failed to pay the actual cash value of total loss vehicles, but rather the distinct components of State Farm's valuation procedure breached its statutory and contractual duties. And the district court in JAMA then picked up on that. And this is in the record. And actually, it's in the JAMA record, for your honors, at docket entry 21-6, page 275 of your docket for the court of appeals. But what the court of appeals, what the district court said is, here plaintiff's challenge, this is again JAMA, plaintiff's challenge is only the legality of the deduction of the typical negotiation, this discount or condition deductions, not the appropriateness of the dollar amount of the comparable vehicles. Contrast that with this case. This case, what the plaintiff's allege is, the dollar amount of the comparable vehicles that Progressive used was wrong. They say it doesn't, it's not consistent with the market because their theory is nobody negotiates the price of a used car. That's their theory. They have a right to prove it. But what it requires is them proving we didn't pay actual cash value. And in order to decide that, we're going to have to look at each individual plaintiff. I'm sorry, your honor. If a breach entitled all the plaintiffs to nominal value, the question I raised with you, would a common question exist? Well, we're not, we do argue below that there was no common question. But the question really here, your honor, is predominance. So even if they were, if they were entitled to nominal damages, which they haven't pleaded, and which as a side, because they didn't plead it, we did not have an opportunity to brief the issue below about whether they would have federal court jurisdiction if all they sought was nominal damages. But putting that aside. Well, let me ask you, you argued Drummond. Excuse me? You argued Drummond. Yes, your honor. Yeah. So, and that's on appeal, of course. Yes, your honor. But Drummond holds that a common question would apply in that circumstance. Drummond did hold that a common question would apply, but it doesn't answer the question of whether common issues predominate over individualized issues. And you still have to address the question of, was there an injury? You may want to award nominal damages for a breach, but there's only a breach. And as Laura said, this is a merits issue, not a damages issue, as their opening brief suggests. It's a merits issue if there is injury. And you only are entitled to even nominal damages if you prove an injury. And the injury in this case is not applying a statutorily barred adjustment. That's JAMA. The injury alleged in this case is we didn't get paid actual cash value, and we should have. And that question will require an individual trial. Again, go back to thinking about what Ms. Ambrosio's individual trial would look like. It's an injury. You applied a cross the board downward deduction, which we want to eliminate. But that's not an injury, your honor, if they were actually paid the amount they're owed under the contract. I mean, assume a hypothetical if we decided that every single time somebody was injured. I can think of lots of hypotheticals. But let me give you one to consider. Assume that Progressive applied a methodology where we did our approach, and then we would multiply it by 10, the amount we're paying, so that everyone had a PSA as part of their analysis. But for your Toyota Camry, we paid you $100,000. You might have had a PSA applied, but you weren't injured because you received the amount the contract requires. So just because a PSA was applied doesn't tell us anything about whether someone was injured until we know how much was their car worth and how much did they get paid. I mean, effectively, wouldn't they have to show that the PSA in every circuit, it's almost like a facial challenge that we would look at in constitutional law. Say there's this group of 10,000, you'd have to say, all 10,000 of these, the PSA was wrongly applied. Now in JAMA, supposedly, that was easier to do because you had a statute. The argument was, it's just unlawful. But here, they have to do that one by one. They've got to show it as to all 10,000. Yes, Your Honor. And I think it's not that, in our case, I think it's not that it was unlawfully applied. I think in our case, they have to show that in applying it, the result was actual cash value wasn't paid. Yeah. But I guess their argument is that it would have been inconsistent with the contract. Only because they think it's not market. I know. So in effect, you're saying, even if we concede a breach, no harm? No, Your Honor. We're saying that the only way you determine if there's a breach is whether there was injury. So the liability question of breach requires proof of injury. You can only prove injury in a case where you're challenging the valuation amount by determining, were they paid the right amount? And that's an individual question, as opposed to, were they paid using a methodology that is unlawful under state law? For these reasons, we do think that- Can I ask one more question? Yes, Your Honor. The Davis case, is there value in holding this for the Supreme Court's decision in Davis? Theoretically, the Supreme Court could rule in Davis and then GVR JAMA. I don't know if that's on the table. Should we wait, or do you think we have enough to go forward now? I absolutely think you're able to affirm the court below without waiting for the LabCorp Davis decision, because I think that the district court below got it right that under Laura, I think Laura governs here. I don't think JAMA is applicable. And I think if you decide that, you can affirm on the basis that the individual issues predominate. If you think that JAMA controls, I do think you then need to wait for LabCorp, because the issue about when you have to determine standing, can you have a class if there are members who have no standing, and will those issues predominate, might complicate things. So I think it's a two-part answer. I don't think you have to wait to affirm, but I think if your intention, if your thought was, this is really a JAMA case, you probably need to wait to hear from LabCorp. Okay. Thank you. Thank you, Your Honors. Well, give them, mark it up to a minute, and we may let you go over, but. All right. Well, thank you, Your Honor. This case is materially indistinguishable from the JAMA decision. And the issue here is that we do challenge the substance as improper of one line item deduction in the methodology they actually chose. And our common evidence, which the district court credited as common, will show in one stroke whether or not the projected sold adjustments, the deductions that were applied, breached the contract. Your Honor, in Lara, you raised a hypothetical. What about a white car deduction? That would be a non-starter. Here, our common evidence shows that the projected sold deduction is just such a categorical non-starter. I can think of any number. There could be a white car deduction, a $500 because we say so deduction. Yeah. But the problem is ultimately, it all comes back to the fair market valuation. And so it seems to me, I mean, you've been very crafty in how you've said this because you say, well, it's only if you got more, then you're out of the class. But we don't know whether they're in or out of the class because you could theoretically have a Mitchell report that overvalues the car by $1,000 and a PSA that then deducts $500. They wouldn't be harmed. But under your theory, they would still be a class because you're saying the PSA deduction shouldn't have been applied. And it doesn't really bear back to whether they were getting a fair market value in the overall valuation. It does, Your Honor, because the market value is determined at a specific point in time. There is no member of our class who was not paid the amount determined by a Mitchell report that was reduced by a categorically improper projected sold deduction. The fifth, sixth, and eighth circuits have said what you are looking at is the time of performance. An insurance company chose this methodology. It applied one deduction. And whether or not that deduction was proper or not is a common question. And so insurance companies, these arguments are not new. They said, well, maybe we overestimated something else. Maybe we made an error in some other deductions. And the circuit courts have been quite clear that we're challenging a line item deduction. Those questions are separate from does this one line item breach the contract? I'm sorry to interrupt you. What's the size of the proposed class? At the time we briefed approximately 55,000 Arizona insureds. This is their default methodology. It's the way they determine actual cash value. Okay. Thank you for your arguments. Thank you to both counsel for your arguments in this case. The case is now submitted and that concludes our arguments for the day. Thank you, Your Honor.
judges: HAWKINS, Wallach, NELSON